J-A20026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LITTLE LEAGUE BASEBALL, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES L. BECK AND MARGARET A. BECK | : | |
| | : | |
| Appellants | : | No. 38 MDA 2017 |

Appeal from the Judgment Entered December 30, 2016
In the Court of Common Pleas of Lycoming County
Civil Division at No(s):  CV-2014-003088-CV

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED FEBRUARY 13, 2018**

In this matter, the trial court found Appellants, James and Margaret Beck, had failed to establish their right to a prescriptive easement over land owned by Appellee, Little League Baseball, Inc. After careful review, we conclude the trial court's opinion and verdict is well supported by evidence of record and that it correctly applied the applicable law. We therefore affirm on the basis of the trial court's opinion.

The Becks own two properties to the east of Little League's stadium complex located outside of Williamsport. They reside on one property, which is surrounded on three sides by lots owned by Little League. The other property is undeveloped, lies to the east of, and is separated by two lots from, the residential property.

The Becks purchased the residential property in 1971. The deed to the residential property includes the reservation of an access easement over property owned by Little League. The easement travels from Route 15, through two lots owned by Little League and on to the residential property, and is known as Borderline Road. The validity of this express easement was not challenged in this matter.

The Becks purchased the undeveloped lot in 1995. The undeveloped property has an access easement over properties that are not owned by Little League.

In 2014, the Becks filed suit against Little League regarding the use of Borderline Road, as well as asserting that Little League had blocked access from the residential property to the undeveloped property. The Becks contended Little League's erection of security checkpoints along Borderline Road for two weeks each summer during the Little League World Series constituted a breach of their easement rights. Furthermore, they alleged they had access rights over the Little League property that is located between the residential property and the undeveloped property. Ultimately, the Becks discontinued this litigation without prejudice.

Little League subsequently filed this action, seeking a declaratory judgment that would determine: a) the legality of its use of security checkpoints during the Little League World Series, and b) the location and limits of the Becks' easement over its properties. The Becks filed a

counterclaim for a prescriptive easement of areas abutting Borderline Road, as well as access to the undeveloped property from the residential property.

The trial court held a bench trial on the matter and entered a verdict in favor of Little League. Specifically, the court found Little League's agent, David Houseknecht, was "fully credible," and the Becks had failed to prove their entitlement to a prescriptive easement by clear and convincing evidence. The Becks subsequently filed this timely appeal.

On appeal, the Becks raise three issues for our consideration. All three issues challenge the trial court's conclusion they had not established the existence of a prescriptive easement. We review non-jury verdicts on two grounds. First, whether the court's findings are supported by competent evidence. *See Stephan v. Waldron Elec. Heating and Cooling, LLC*, 100 A.3d 660, 664 (Pa. Super. 2014). If they are, we must defer to the trial court's judgment and may not substitute our own. *See id*. As such, the trial court is free to accept or reject the testimony of both expert and lay witnesses, and to believe all, part or none of the evidence. *See Terwilliger v. Kitchen*, 781 A.2d 1201, 1210 (Pa. Super. 2001).

Next, if the findings have adequate support in the record, we review the court's legal conclusions. We owe the trial court no deference on issues of law. *See Stephan*, 100 A.3d at 665.

The trial court, in its November 9, 2016 opinion and verdict, has thoroughly reviewed the claims on appeal and disposed of all arguments on the merits. We have reviewed the parties' briefs, the relevant law, the certified record, and the well-written opinion of the Honorable Richard A. Gray. The trial court's findings of fact and conclusions of law comprehensively dispose of Appellants' issues on appeal, with appropriate references to the record and without legal error.[1] Therefore, we will affirm on those bases. **See** Trial Court Opinion, dated 11/9/16.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2018

---

[1] By way of summary, the court found James Beck's testimony fell short of establishing their use of the contested portions of Little League's property was continuous and adverse for twenty-one years. In particular, the court found the Beck's use of the areas at issue was not sufficiently outside the scope of the express easement. The Becks argue Little League did not present testimony on the express easement; however, the Becks admitted to the existence and terms of the express easement in their answer to Little League's complaint and stipulated that the express easement was accurately depicted on a survey map entered as an exhibit at trial. **See** N.T., Non-Jury Trial, 10/25/16, at 4.

FILED
INTY

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

LITTLE LEAGUE BASEBALL, INC.,
                     Plaintiff,                    :

     vs.                                           :    DOCKET NO. 14-03,088
                                                   :    CIVIL ACTION - LAW
JAMES L. BECK and MARGARET A. BECK,                :
                     Defendants                    :    NON-JURY TRIAL

## OPINION and VERDICT

AND NOW, this 9th day of **November, 2016** after a non-jury trial held on October 25

and 26, 2016, and a site view to the property on October 25, 2016, the Court having entered

verdict in favor of Plaintiff/Counterclaim Defendant, Little League Baseball, Inc., and against

Defendants/Counterclaim Plaintiffs, James L Beck and Margaret A. Beck on all claims on

November 2, 2016, the Court provides the following opinion and more specific verdict as

follows.

### FINDINGS OF FACT

1.  Plaintiff Little League Baseball Inc. ("Little League") owns property essentially surrounding

    Defendants' residential property at 182 Borderline Road, identified as Tax Parcel Number

    02001-103 ("103") on exhibits entered into evidence and marked as Plaintiff's Exhibit 2 and

    6.

2.  Specifically, Little League owns real property in South Williamsport and Armstrong

    Township including the following Tax Parcel Numbers: 51-005-522; 51-005-526; 02-001-

    107; 02-001-106; 02-001-102; 02-001-109.

3.  Borderline Road is situated on land owned by Little League.

**SCANNED**

4. Defendants Mr. and Mrs. Beck (collectively "Becks") have a right of way over Borderline Road, by express grant, which is delineated on documents entered into evidence and marked as Plaintiff's Exhibit 2 and 6.

5. Plaintiff has placed security measures over Borderline Road during the Little League World Series for approximately two weeks per year.

6. Security measures during the Little League World Series have included issuing passes to the Becks, their guests, and other permitted users of Borderline Road, and placing security checkpoints on Borderline Road where security personnel check the identification and/or passes of all vehicles attempted to travel Borderline Road.

7. The Court finds David B. Houseknecht fully credible.

8. The security measures implemented so far have allowed the Becks to use Borderline Road to access their property by placing passes in their vehicle and being subject to security checks.

9. No testimony was presented by the Becks that Little League interfered with or even inconvenienced them in their use of Borderline Road.

10. Little League's security measures do not unreasonably infringe upon the Becks' use of their easement.

11. The Becks have parked vehicles on the western boundary appearing on the northwest portion of Borderline Road ("parking area") over the years.

12. The parking area falls within the right of way granted by express grant, which is delineated on documents entered into evidence and marked as Plaintiff's Exhibit 2 and 6.

13. Since about 1971, the Becks sporadically and non-exclusively accessed property surrounding the residential parcel 103, to the west beyond the maple trees, to the north and to the south.

2

14. The Becks use of the areas surrounding their parcels was not proven to be adverse, open, continuous, notorious and uninterrupted for twenty-one years.

15. In 1995, the Becks obtained ownership of land identified as tax parcel number 02-001-113 ("113") on exhibits entered into evidence and marked as Plaintiff's Exhibit 6.

16. The Becks have used the area previously covered by stone and gravel roadway on the south border of their property to access their parcel 113 which was purchased in 1995.

17. The Becks accessing 113 from 103 through Little League property was not proven to be adverse, open, continuous, notorious and uninterrupted for twenty-one years.

CONCLUSIONS OF LAW

1. One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Johnson v. Tele-Media Co., 2014 PA Super 83, 90 A.3d 736 (Pa. Super. 2014), *citing*, Baylor v. Soska, 540 Pa. 435, 658 A.2d 743, 744 (Pa. 1995), *citing* Conneaut Lake Park, Inc. v. Klingensmith, 362 Pa. 592, 66 A.2d 828 (Pa. 1949). *See, also*, Boyd v. Teeple, 460 Pa. 91, 331 A.2d 433 (Pa. 1975), *citing*, *See*, Bodman v. Bodman, 456 Pa. 412, 321 A.2d 910 (1974).

2. Adverse possession must be demonstrated by clear and convincing evidence. Stevenson v. Williams, 188 Pa. Super. 49, 145 A.2d 734 (Pa. Super. 1958)(To establish "a right or easement by prescription, the evidence and proof thereof must be clear and positive.")

3. "A sporadic use of land, by one without title to it, will not operate to give him a title, no matter how often repeated[.]" Parks v. Pennsylvania R. Co., 301 Pa. 475, 481; 152 A. 682, 684 (Pa. 1930)(citation omitted). Occasional mowing of a lawn has been considered entirely insufficient to establish title by adverse possession. Johnson v. Tele-Media Co., 90 A.3d 736, 741 (Pa. Super. 2014).

3

4. The Becks use of the areas surrounding their parcels was not proven to be adverse, open, continuous, notorious and uninterrupted for twenty-one years and therefore they did not obtain title to it by adverse possession.

5. Specifically, the Becks use of land on the western boundary of their property was not proven to be adverse, open, continuous, notorious and uninterrupted for twenty-one years.

6. The Becks use of land on the southern boundary of their property was not proven to be adverse, open, continuous, notorious and uninterrupted for twenty-one years.

7. The Becks' right of way over Borderline Road, by express grant, allows them to use Borderline Road without unreasonable interference with the use of Borderline Road. Palmer v. Soloe, 601 A.2d 1250, 1253 (Pa. Super. 1992)(Land owner may not unreasonably interfere with the use of the easement.)

8. The owner of the dominant and servient estates must not unreasonably interfere with use of an easement. Taylor v. Heffner,359 Pa. 157, 163; 58 A.2d 450, 453 (Pa. 1948)

9. Little League's security measures over Borderline Road during the Little League World Series for approximately two weeks per year, which includes issuing passes and subjecting the Becks to security checks, do not unreasonably interfere with the Becks use of the right of way.

10. "A prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use for a period of twenty-one (21) years." Walley v. Iraca, 360 Pa. Super. 436, 441-442 (Pa. Super. 1987), citing, Dunlap v. Larkin, 342 Pa.Super. 594, 605, 493 A.2d 750, 756 (1985); Keefer v. Jones, 467 Pa. 544, 547, 359 A.2d 735, 736-737 (1976).

4

11. [T]he party asserting the easement must demonstrate the above elements by proof that is clear and positive. Walley, supra, 360 Pa. Super at 442, *citing,* Adshead v. Sprung, 248 Pa.Super. 253, 256, 375 A.2d 83, 84 (1977).

12. An easement does not confer any title to physical property. Smith v. Fulkroad, 305 Pa. Super. 459, 463-464, 451 A.2d 738, 740-741 (Pa. Super. 1982), *citing,* Cain v. Aspinwall, 289 Pa. 535, 137 A. 610 (1927).

13. "A fundamental principle is that an easement for the benefit of a particular piece of ground cannot be enlarged and extended . . . . The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication." Fulkroad, supra, 451 A.2d at 741, *citing,* Percy A. Brown Co. v. Raub, 357 Pa. 271, 293, 54 A.2d 35 (1947).

14. By use of Borderline Road, the Becks did not and could not gain title to it because they had an express grant of right of way over it.

15. The Becks use of the parking area over Borderline Road did not expand the express grant of a right of way already existing on Borderline Road.

16. By parking in the parking area on Borderline Road, the Becks did not and could not enlarge their easement over Borderline Road or obtain title to such ground. *See, e.g.,* Fulkroad, supra.

17. The Becks use of the pathway on the norther border of the property was not proven to be adverse, open, continuous, notorious and uninterrupted for twenty-one years.

18. Moreover, the Becks the pathway on the northern border of the property was located on an express grant of a right of way as to power lines; the Becks use outside of the conditions expressly granted neither expanded or enlarged the easement to include such use. *See, e.g.,* Fulkroad, supra.

5

19. The Becks use of the gravel roadway to the south of their property to access 113 was <u>not</u> proven to be adverse, open, continuous, notorious and uninterrupted for twenty-one years.

20. Moreover, the Becks use of the gravel roadway, which is situated on an express grant of an easement the Becks enjoy over Borderline Road to access their residence, did not and could not expand that right of way over Little Leagues' property to 113.

### DISCUSSION

At issue in this case is (1) whether Little League may continue to secure Borderline Road where the Becks have a right of way over Borderline Road to access their property and (2) whether the Becks have gained rights to property titled to Little League by means of adverse possession or prescriptive easement.

As to the first issue, the Court concluded that the Little League may continue to secure Borderline Road in a reasonable manner and that the methods employed by Little League to date have not unreasonably interfered with the Becks' use of Borderline Road and therefore may continue. The owner of the dominant and servient estates must not unreasonably interfere with use of an easement. Taylor v. Heffner, 359 Pa. 157, 163; 58 A.2d 450, 453 (Pa. 1948). Even a swinging gate, which requires one to exit the vehicle to operate and then re-exit the vehicle to close, is not a legal obstruction of an easement. *See*, Haig Corp. v. Thomas S. Gassner Co., 163 Pa. Super. 611, 63 A.2d 433 (Pa. 1949).

In the instant case, the Becks enjoy an easement over Borderline Road which sits on Little League's property. Therefore, Little League may not unreasonably interfere with the Becks' use of the easement. By securing Borderline Road with security checkpoints for about two weeks out of the year, Little League does not unreasonably interfere with the Becks' use of Borderline Road. Such checkpoints are far less intrusive than other permissible burdens on a

6

right of way, such as requiring one to exit and re-exit a vehicle to operate a gate. Haig Corp., supra.

As to the second issue, the Becks have not proven by clear and convincing evidence actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years as required for title by adverse possession of prescriptive easement. Johnson v. Tele-Media Co., 2014 PA Super 83, 90 A.3d 736 (Pa. Super. 2014), *citing*, Baylor v. Soska, 540 Pa. 435, 658 A.2d 743, 744 (Pa. 1995), *citing* Conneaut Lake Park, Inc. v. Klingensmith, 362 Pa. 592, 66 A.2d 828 (Pa. 1949). *See, also,* Boyd v. Teeple, 460 Pa. 91, 331 A.2d 433 (Pa. 1975), *citing, See,* Bodman v. Bodman, 456 Pa. 412, 321 A.2d 910 (1974). The Becks testified to sporadic and temporary uses of the land, including some mowing and planting, which has generally been considered insufficient to confer such title in contrast to maintaining a lawn in connection with a residence, improvements to land, enclosing land or other conduct that places a reasonable person on notice that the land is being claimed by another as one's own. *See, e.g.,* Moore v. Duran, 455 Pa. Super. 124, 137 (Pa. Super. 1996)(citation omitted); Johnson v. Tele-Media Co., 90 A.3d 736, 741 (Pa. Super. 2014); Parks v. Pennsylvania R. Co., 301 Pa. 475, 152 A. 682, 684 (Pa. 1934); Young v. Herdic, 55 Pa. 172. McArthur v. Kitchen, 77 Pa. 62. Pistner Bros., Inc. v. Agheli, 359 Pa. Super. 177, 518 A.2d 838 (Pa.Super.1986)

Moreover, the prescriptive easements sought by the Becks (to the North, to the South, and the parking spaces) cannot be permitted because they impermissibly attempt to expand existing easements the Becks enjoy by express grant. Smith v. Fulkroad, 305 Pa. Super. 459, 463-464, 451 A.2d 738, 740-741 (Pa. Super. 1982).

Accordingly, the Court enters the following Order and Verdict.

7

## ORDER AND VERDICT

AND NOW this 9<u>th</u> day of **November 2016**, following a non-jury trial in this matter, it is ORDERED and DIRECTED that verdict entered in favor of Plaintiff/Counterclaim Defendant, Little League Baseball, Inc., and against Defendants/Counterclaim Plaintiffs, James L Beck and Margaret A. Beck is reaffirmed. It is further ORDERED and DIRECTED as follows.

1. As stipulated by the parties, the respective boundaries of the properties and the Beck residential easement providing ingress and egress to the Beck Residential Property is accurately delineated in the Boundary Survey entered into evidence and marked as Plaintiff's Exhibit 2.

2. The Beck residential easement as delineated in the Boundary Survey entered into evidence and marked as Plaintiff's Exhibit 2, terminates at the property line and does not cross Little League Parcel 02-001-102.

3. Because the Beck residential easement terminates at the property line, as delineated in the Boundary Survey entered into evidence and marked as Plaintiff's Exhibit 2, Little League may lock the gate at the boundary of that property at any time for any reason.

4. As Borderline Road is situated on Little League's land, Little League may place security personnel and security measures at any location on Little League property, including, but not limited to, the entrance to, along and upon Borderline Road provided the measure do not unreasonably burdened the Becks' use of their right of way on Borderline Road

5. Little League may utilize security methods over Borderline Road in the manner that they have implemented them to date; such methods have not unreasonably burdened the Becks' use of their right of way on Borderline Road.

8

6. The Becks' claims for title to land or easements by prescription and adverse possession to land to the West of the Parcel, to the South of the parcel and to the North of the Parcel are denied for insufficient proof.

7. All personality of the Becks which currently sits on Little League property, including but not limited to the list of items in Little League's complaint must be removed within ten (10) days.

8. The Becks' counterclaims (counts 1 and 2) for adverse possession and prescriptive easement are dismissed with prejudice.

9. The Becks' counterclaims (counts 3 and 4) are withdrawn with prejudice by stipulation, Plaintiff's exhibit 1.

BY THE COURT,

_____
Richard A. Gray, J.

November 9, 2016
Date

cc:    Thomas C. Marshall, Esq.
       Robert A. Hoffa, Esq.

9