520 A.2d 886

**Norman W. WALLEY and Earnestine E. Walley, His Wife**

**v.**

**Joseph IRACA, Joseph G. Iraca Coal Company, and Beverly Coal Mining Company, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1986.

Filed Jan. 26, 1987.

438

Ervin S. Fennell, Jr., DuBois, for appellants.

Kim C. Kesner, Clearfield, for appellees.

Before WICKERSHAM, BROSKY and JOHNSON, JJ.

**BROSKY, Judge:**

■ This is an appeal from the denial of post-trial relief in an action in equity.[1] The issues raised by this appeal are: (1) did the chancellor in equity err in finding that appellants had not met their burden of proof in demonstrating the existence of a prescriptive easement over appellees' property? (2) did the chancellor err in awarding punitive damages? Upon review of the record, we find that the evidence supports the chancellor's findings, as well as the award of punitive damages, and accordingly affirm.

The factual background to this matter is rather lengthy and complex, but shall be summarized as briefly as possible. In 1946, appellant Joseph Iraca[2] became the owner of certain coal and mining rights on a fifty (50) acre tract of property owned by Kenneth Fetzer; this tract was later conveyed to George and Buella Malinky, with Mr. Iraca's rights intact. The Malinky property lies on the southeast border of a ninety-one (91) acre tract currently owned by appellees, Norman and Earnestine Walley. The Walleys acquired this tract in 1969 from Mrs. Walley's father, John Earnest, who had held title to the tract since 1947.

1. Initially, there is a question as to whether the current appeal is properly before us. Judgment was entered on March 8, 1986, while the appeal was not filed until April 22, 1986, or in excess of the thirty-day time limitation prescribed in Pa.R.A.P. 903(a). Appellees have not challenged the validity of the appeal on this basis. However, it is well settled that an appellate court may raise questions of appealability and jurisdiction *sua sponte. Indiana Cty. Hospital Authority v. McCarl's Plumbing and Heating Co.*, 344 Pa.Super. 226, 228, 496 A.2d 767, 768 (1985).

At the time judgment was entered, appellants' post-trial motions, excepting to the decree nisi, were still outstanding. As such, the March 8 entry of judgment was erroneous, and appellants were not required to file an appeal until the post-trial motions were decided. *Murphy v. Brong*, 321 Pa.Super. 340, 343–344, 468 A.2d 509, 511 (1983).

The chancellor's order denying appellants' post-trial motions was not entered until March 31, 1986. Hence, pursuant to *Murphy*, supra, appellants had thirty days from the entry of the March 31 order to appeal. As the appeal was filed on April 22, it was timely filed, and this Court may address the issues raised on the merits.

2. Appellants are Joseph Iraca, in his own right, and two coal businesses in which Mr. Iraca has had an ownership interest.

Iraca claims that, in order to haul the coal he mined from the Malinky property, to Legislative Route 17077, on the northeastern boundary of the Walley property, he travelled upon a dirt road on the Walley property, which, he maintains began at the Malinky border, and proceeded northeast the entire length of the Walley property, intersecting at the northeast border with L. R. 17077. According to Iraca, his use of the dirt road began in 1948 or 1949, and continued without significant interruption until 1976, when Mrs. Walley's cousin, James Earnest, and Grover Fleck commenced strip mining on the Walley property, and placed a cable across the road. Earnest and Fleck gave Mr. Iraca a key to the lock on the cable, and permitted Iraca to use the road, until the Walleys objected in 1982, and reported Iraca to the Pennsylvania Department of Environmental Resources ("DER"). DER ordered Iraca to cease hauling across the dirt road on the Walley property, and Iraca was forced to use an alternative hauling route across the Malinky property.

Iraca contends that he used the road in question between 1948 and 1976 whenever he chose, without asking permission, and, as such, had a prescriptive easement over the Walley property before the Earnest/Fleck mining operations ever began.

The Walleys maintain, on the other hand, that the road in question never extended as far as the Malinky border until the Earnest/Fleck operations in 1976, and that a two to three hundred foot section of so-called "roadway" between the Malinky border and the site of the 1976 operations, was virtually impassable due to trees and wilderness overgrowth until 1976.

At trial, Iraca presented expert testimony, which concerned certain aerial photographs and a topographical map from the 1950's, which allegedly depicted the dirt road as extending to the Malinky border. The Walleys countered with eyewitness testimony that the dirt road fell short of the Malinky border, and that the so-called "roadway" leading from the border was, in all likelihood, telephone lines

put in by Pennsylvania Electric Company. The same eye-witnesses also testified that they never saw the allegedly continuous mining operations by Iraca on the Malinky property until the 1970's, and could not remember seeing Iraca on the Walley property until that time. Finally, these witnesses indicated that, though Iraca ceased hauling after the DER order, he continued to use the road for personal reasons.

The chancellor in equity found that Iraca had not acquired a prescriptive easement, but had willfully trespassed upon the Walley property. The chancellor granted a permanent injunction, compensatory damages for "wheelage," [3] and punitive damages. After the denial of timely post-trial motions, this appeal followed.

The scope of appellate review of a decree in equity is very limited. We are bound to accept the chancellor's findings of fact, and shall not reverse absent a clear abuse of discretion, or an error of law. *Dudash v. Dudash,* 313 Pa.Super. 547, 552–553, 460 A.2d 323, 326 (1983); *Frowen v. Blank,* 493 Pa. 137, 142–143, 425 A.2d 412, 415 (1981). Moreover, where the chancellor's findings are largely dependent upon the credibility of witnesses, the findings are entitled to particular weight, as the chancellor had the opportunity to observe the demeanor of the witnesses. *Dudash,* supra.

With respect to the first issue raised, the elements that must be established to prove an easement by prescription are well settled in the law. A prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use for a period of twenty-one (21) years. *Dunlap v. Larkin,* 342 Pa.Super. 594, 605, 493 A.2d 750, 756 (1985); *Keefer v. Jones,* 467 Pa. 544, 547, 359 A.2d 735, 736–737 (1976). Furthermore, the party asserting the easement must demonstrate the above elements by proof that is

---

**3.** "Wheelage" is the price paid to a landowner for the privilege of hauling coal over his or her land. It is calculated on a price per ton figure, which is negotiated on the basis of such factors as the road's condition and the ease of hauling upon it.

clear and positive. *Adshead v. Sprung,* 248 Pa.Super. 253, 256, 375 A.2d 83, 84 (1977).

■ This Court, upon review of the extensive transcript of testimony, cannot find that the chancellor erred in finding that appellants had not proved an easement by clear and positive evidence. As such, we do not find it necessary to reiterate the trial court's resolution with respect to each element. We would only comment upon one argument raised in appellants' brief, which we feel merits some discussion.

Appellants make mention of the chancellor's finding that Mr. Iraca, on occasion, requested permission to use the Walleys' dirt road, and, therefore, did not possess an "attitude or belief that such use was the exercise of a property right." [4] This finding was based upon certain testimony at trial, given by appellees, that Iraca phoned the Walleys in 1976, at their home in Florida,[5] to request permission to haul coal across their property. When told he would have to pay wheelage, he refused to do so, and the Walleys denied permission for the hauling. Iraca denied at trial that the above phone conversation had ever taken place. Appellants now assert that, even had the chancellor chosen to believe the Walleys, the alleged request for permission occurred in 1976, or almost thirty (30) years after Iraca supposedly began to use the dirt road as he saw fit. As such, appellants maintain, any reliance the chancellor placed upon this alleged incident would be error, as the incident would have occurred after the twenty-one (21) year prescriptive period, and would have had no relevance. We disagree.

■ It is true that a landowner has the burden of proving the defense that the use of the alleged easement was under a grant of permission, contract, or special license. *Tarrity v. Pittston Area School District,* 16 Pa.Cmwlth. 371, 328 A.2d 205, 207 (1974); *Loudenslager v. Mosteller,* 453 Pa.

---

4. R.R., at p. 410(a).

5. The Walleys were deeded the property in question in 1969, but have not been Pennsylvania residents since the 1950's.

115, 117, 307 A.2d 286, 287 (1973). However, the burden of demonstrating this defense does not arise until the alleged easement holder has met his or her burden of proof that the use was adverse, open, notorious, and continuous for an uninterrupted period of twenty-one years. *Tarrity,* supra; *Loudenslager,* supra.

■ A review of the trial court opinion indicates that the chancellor did not consider the evidence of Iraca's 1976 request as establishment, by appellees, of the defense of permission. Clearly, had appellees proffered the evidence for that purpose, it would have been insufficient as a matter of law, as the request did occur after the alleged prescriptive period had run. Rather, the chancellor viewed this evidence as bearing upon *appellants'* establishment of one of the requisite elements for the creation of a prescriptive easement: continuity of use.

To establish continuity of use, the evidence need not show a constant, day-to-day use. Rather, continuity is established if the evidence shows "a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right." *Keefer,* supra, 467 Pa. at p. 548, 359 A.2d at p. 737.

■ The chancellor found the 1976 request relevant with respect to Iraca's claim that he had always used the Walleys' dirt road "with the attitude and belief" that his use was pursuant to a claim of right. We concur with the chancellor's assessment of relevancy. The only testimony supporting Iraca's claims came from Iraca himself; as such, his credibility was a material factor in the determination of continuity of use, or its absence, for the prescriptive period. The credibility of a witness may be impeached (1) by showing that, on a prior occasion, he made a statement inconsistent with his present testimony, (2) by competent evidence tending to show defects in memory, or (3) by contradictory testimony from other witnesses whose version of the facts differs from the witness being impeached. *Commonwealth*

*v. Baez,* 494 Pa. 388, 394, 431 A.2d 909, 912 (1981); McCormick, Evidence, § 33 at 66 (2d ed.1972). This, of course, does not permit the impeachment of a witness on collateral matters; the grounds for contradicting a witness must be germane to the issues at trial. *McGoldrick v. Pennsylvania R. Co.,* 430 Pa. 597, 600, 241 A.2d 90, 92 (1968). Clearly, any request for permission to use the road made by Iraca, whether in 1950 or 1976, would be inconsistent with his assertions on the stand that he had acted under claim of right during the prescriptive period. As such, evidence of the 1976 request, as derived from appellees' testimony tended to seriously undermine Iraca's credibility on a germane issue, i.e. his possession of the requisite attitude or belief in support of any alleged continuity of use, and was highly relevant.

Hence, we find that the chancellor's consideration of the 1976 request was not error. We uphold the trial court's determination that appellants did not meet their burden of proving an easement by prescription, and that the burden had not shifted to the appellees to demonstrate a grant of permission during the prescriptive period.

██ As for appellants' challenge to the chancellor's award of punitive damages, we, again, find no error. It is the law in Pennsylvania that punitive damages are awardable upon a showing that a defendant has acted with "reckless indifference to the interests of others." *Rhoads v. Heberling,* 306 Pa.Super. 35, 38, 451 A.2d 1378, 1379 (1982). The trial court opinion states that appellants acted with "total and willful disregard of (appellees) right to absolute possession and control of their property." [6] Upon review of the record, we hold that the evidence at trial supports the chancellor's finding, and that the award of punitive damages, as such, was not an abuse of discretion.

Order affirmed.

6. R.R., at p. 411(a).